DEC. 11. 2009  1:46PM   M.H.T.&L. LLP

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION

........ MIDDLESEX ............ , ss

No. 2009 - 4707



Yasser Eleskalani , Plaintiff(s)

v.

Town of Natick ............ , Defendant(s)
Police Dept.

A TRUE COPY ATTEST

_(signature)_

DEPUTY SHERIFF
Middlesex County

12/4/09

DATE OF SERVICE

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon ...... Yasser Eleskalani ............

........................ plaintiff's attorney, whose address is ...1321 Worcester Rd #305

...Framingham , Ma  01701............, an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at ...Middlesex Co. Superior

court @ 200 trade ctr  2nd Floor ............ either before service upon plaintiff's attorney or within a
Woburn Ma 01801
reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at ............................................................................

the  3rd ........ December............... day of ...... 2009 ..........................................................

........................, in the year of our Lord ............................................

_(signature)_

Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
for each defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

FORM NO. SUP. — 001

DEC. 11.2009  2:04PM    M.H.T.&L. LLP                                 NO.7364   P. 69

09-1717

# TABLE OF CONTENTS

Complaint ..................................................................................................01

Nature of the Action ...........................................................................02

Statement of the Incident ..................................................................03

Statement of the Case .........................................................................04

Statement of the Facts .........................................................................06

Analysis and Causes of the Action ..................................................18

Conclusion ..............................................................................................23

Prayer for Relief ...................................................................................24

# ADDENDUM

➢ DCF Guideline & Ruling on "Definitions" .............................01

➢ M.G.L. Referred to in the Complaint  ...........................02-04
[41 S97A & S23B, 265 S37, 268 S6A a7 272 S98]

➢ U.S.C. Referred to in the Complaint ...........................05-06
[Amendment IV & XIV & Title 42 Sec 1983 & Sec 1985(3)]

Referred to in Pages: 18, 19, 20, 21, 22, 23 and 24

# APPENDIX

Exhibits 01 to 10 ..............................................................................01-27

------------------------------------------------------------------

Abbreviation: **PR** = Police report / Demand **1st to 5th** = Number

of times Plaintiff demanded from Police Officer to be

apprehend of the Law Violation his Child committed to be

Seized away from him and interrogated.

United State District Court

District Court of Massachusetts

At Natick/Framingham

09-1717

Civil Action

No._____

Yasser Elaskalani [Plaintiff]

Vs.

Town of Natick, Natick Police Department [Defendant]

Complaint

Parties

PLAINTIFF

1. Plaintiff Yasser G Elaskalani is a Citizen of United States since January 20, 2000 and a resident at 1321 Worcester Road, Apt. 305 at the Town of Framingham

2. Plaintiff has BS in Accounting 1981, Diploma in Consumer Lending 2000, Diploma in Mortgage Lending 2001, Diploma in Bank Operation 2002 and Diploma in Commercial Lending 2007 from The Center for Financial Training of Southern New England

Defendant

3. The Town of Natick located at Middlesex County, Massachusetts at 13 East Central Street, Natick, MA 01760; that operate Natick Police Department.

4. Natick Police Department the law enforcement authority in the town of Natick located at 20 East Main Street, Natick, Ma that is reporting directly to Selectman of the town.

1

Jurisdiction

5. This District Court of the Town of Framingham has jurisdiction over this matter pursuant to 28 U.S.C. S1332.

## Nature of Action

6. This is a civil action for damages and injunctive relief under 42 U.S.C. 1983, 42U.S.C. 1985, and the common law of the State of Massachusetts arising form the following events:

A. The loss of Plaintiff's Civil Rights without established Probable Cause and Following the Due Process of the Law.

B. The Use of Threat under the Color of Law to deprive Plaintiff from his Civil Rights and Plaintiff's Natural Bondage to his Child.

C. Fabrication in Policed Record to cover up the Constitutional Violations and Misconduct of Police Officer.

D. The Use of Incompetent Police Officer observation of Inconceivable Sexual Hallucination, Suggesting that Plaintiff's 7 years old was engaging his father in sexually implicated Positions in public performance, as "Probable cause" to further the intentional inflection of the Harm.

E. Chief of Police Negligence to respond to Citizen Compliant promptly and timely without the need for Political Pressure.

F. Selectmen/women negligence to timely investigate Citizen Complaint about town Departments and report the result in town meetings.

2

## Statement of the "Incident"

On April 1, 2007 Plaintiff and his 7 years old Child went to Cochituate Lake State Park to enjoy and relax over the Boat Ramp together.

The Weather was perfect but little windy; and the Ramp area was occupied with Several Visitors parking their cars next to each other.

Plaintiff asked his son to go and get his jacket from his car that parked a few feet away. The Child refused and wanted to wear his own father's jacket instead.

So, he started to wrestle his father over the jacket. In about 2 minutes he managed to takeover his father's jacket, wore it and sat next to him happy with his victory.

The Father enjoyed his son's empowerment, hugged him, sat next to him and relaxed quietly until Natick Police Rushed Angrily into the scene toward a car parked next to Plaintiff's car.

According to Chief of Natick Police, they received a "Single" 9-1-1 report but, According to the "Angry African American Police Officer" who was assigned to investigate, he thought they received "Several" Phone calls on what was deemed "Suspicious Behavior".

While they both agreed on the reported concern was "Vague Suspicious Behavior" over a Boat Ramp of a State Park involved 6-7 years old boy and Hispanic 5.7 ft Adult man, however, they both Failed to understood whom and what the "Endangered Subject" Is! So, Police "Investigation" was launched in "Undetermined Mission".

3

## Statement of "the Case"

As the Biological Father, faced with the above Law enforcement:

1. Can the Law Enforcement Agency in USA [or Egypt] force
   Separation, instruct or "Seize" Child away from Biological
   Father; without telling Father the reason why his child is
   Going to be seized; and leave Father wonders?

2. Can the Law Enforcement Agency "Investigate" an alleged
   Suspicious Sexual Behavior Reported to 9-1-1 with your Seized
   Child who is under 14 years of age? [Definition of "Mature
   Child"- DCF 110 CMR Glossary]

3. Can "Probable Cause" to overpass the Due Process of The Law,
   suggests that a 7 years old boy was witnessed engaging his
   Father in Bizarre "Inconceivable Homosexual Behavior" enacted
   and initiated by the Child forcing his Crotch [1st Scene] then,
   his Bottom [Later Scene] "near" his Father's face?

4. Can the Law Enforcement Agency documents in the Police report
   lies [to Cover Failure to Follow the "Due Process"] using Lies
   [Referring to Several non-existed Calls in Police 9-1-1 Log]?

5. If the DCF defines the "Abuse" as "the non-accidental
   commission of any act by caretaker upon a child" [DCF 110 CMR
   Glossary], can the Law Enforcement, after three officers'
   investigations with the Child, still be confused about that?

6. When Citizens file "Citizen Complaint" against Police Officer
   Misconduct, Should Authority to investigate leaves them
   waiting full year suffering from Humility, to be notified
   that, the Officer was "Mistaken" but still "Acted Properly"?

7. Can Board of Selectmen of towns in USA be aware of Police
   misconduct and ignore/choose Not to investigate the Chain of
   Command that is leading and allowing that to happen?

8. Finally, can any Police Officer under the color of his Law
   Enforcement and Uniform threaten any Citizen to loss his Child
   Custody if they were seen together again in Public?

 In Egypt [Motherland of Plaintiff], the answer is "Yes" to "All
of The Above" and you may take the matter in your own hands to
fight for your dignity and your life if required.

 In USA [Motherland of the Child], A few weeks after this
Traumatic Experience, the Child raised the above questions to
Abraham Lincoln in a letter drawn and articulated to express his
strong will to find out the answer for his anxiety sooner or later.

 But, because the Child Proposed either to write a paper like A.
Lincoln or to fight for the little kids, the father is filing this
Complaint to prevent his child from ever thinking "Taking Matters
in his own hand" should be the way to live or a way to die, neither
in USA nor in any other place on Earth.

Please, see the Following. [Exhibit 10]

5

Sam



Vote for

Abraham Lincoln

Song

Oh, Abraham Lincoln, If only you could come back alive I would be so happy. I just have a problem there are little kids in jail and I think thats wrong. what should I do? write a paper like you or should I fight for the little kids. Oh Abraham lincoln please come back alive.

## Statement of the "Facts"

Facts 1:
Natick Police Officer is here to "Investigate" "A Report" of "Suspicious Behavior"

I. "I [Officer] told him [Plaintiff] that we received [Several] phone calls as to what was deemed "inappropriate Behavior" [PR]

7.    Plaintiff -who is an Egyptian Arab American- and his 7 years old American Born son went to enjoy Quality Time together relaxing over a boat ramp in Cochituate Lake State Park among "Several" visitors.

8.    A few minutes later, an African Black American huge man wearing a Police Uniform arrived at the scene **angry**; he approached a Silver Toyota Camry that has a "Cross" hanging from the interior mirror indicating to the Christian Identity of the driver who was a White Skin woman around the age of 30 years old.

9.    While The Black Police Officer was talking to the reporting party [White Skin girl sitting in the passenger seat of the Silver Toyota], he started an angry eye contact with Plaintiff who was carefully watching his arrival the second he entered the park.

10.    In response, Plaintiff ignored his "Prejudice attitude", and relaxed back waiting for him to find out why "Natick Police" is "Angry at him" and "Formed predetermined Opinion" in this one sided-investigation [Exhibit 5].

6

II. "The Child now gets up and lay on top of the man" [PR]

11.    Plaintiff's Child, who was sitting quietly next to his
father [Plaintiff] [PR Page 1], got up to move from one narrow
side of the ramp to the other [Passing by his father's upper
body] as he described to his therapist, he was trying to relax
next to his daddy.

12.    Before the Child had finished his movement, the Black
Officer left the calling party and ran toward him yelling out
"You ... You... young man ... come down here right now" twice while
holding his hands on his guns that were surrounding his belt!

III. "The man [Plaintiff] angrily stepped towards me and asked me
[Officer] what I was doing" [PR]

13.    The intimidated child ran toward the Black Officer who
started to interrogate him [Per Police report, in sexually
explicit language neither he speaks it nor he understands it];
the Child felt guilty and thought he was going to be arrested
and go to jail [Per his testimony to his therapist]; and
started to look petrified.

14.    When Plaintiff/Father –who had not moved yet– observed
that his child began to suffer emotionally, he quickly stood
up; started to get angry; walked toward the angry Black
Officer; questioned his authority to yell at his child and to
seize him away from his own father in an extremely vulgar
manner does not suit his Police Uniform; and **demanded (1ˢᵗ)** the
Officer to explain the "Probable Cause" of his act of seizure
to his 7 years old child.

7

## V. "I [Officer] asked the man to lower his voice" [PR]

15.    The Black Officer distracted his attention away from the child and started walking towards plaintiff ordering him to stay where he was; stuck his chest against plaintiff's face and asked him angrily **"Are you yelling at a Police Officer?"**

16.    The Black Officer did not seem to understand Plaintiff's demand for his Civil Right so, Plaintiff reminded him out loud again that he [Under the color of Law] is the one who is yelling at his child; and seized the Child away with out any obvious cause or valid explanation.

17.    Plaintiff **demanded again (2nd)** from the Black Officer to tell him immediately what exactly the Law violation –if any– that entitled him [Under the color of Law] to interrogate a "Seized and Petrified child", before obtaining his father's Consent.

18.    The Black Officer angrily circled his arm around his face shouting **"He is allegedly your son"** then, talked to dispatcher asking for more force. In response, Plaintiff confirmed to him that the child is indeed his own son; and **demanded again (3rd)** to know what his child did wrong; and why he [Black Officer] is yelling at him; and is seizing him as if there is no Law rules this Town.

19.    The angry Black Officer denied that he was yelling at the Child; ordered plaintiff to show his ID and then, questioned him his name, where he lives and where he works.

8

20.    Then, the angry Officer ordered plaintiff not to move;
took the child with him to the back of plaintiff's car; and
ordered the Child not to move. Then, while Officer circled
twice around Plaintiff's car searching it, 2 more Police Cars
arrived.

---

### Fact 2:
Two more Police Officers from Wayland and Natick arrived to
further "Investigate" with the "Intimidate Petrified Child"

---

## I. "Arriving on scene was Officer Kevin Kelly of Natick Police, as well as Wayland Officer" [PR]

21.    At the arrival of two White Police Officers, Plaintiff
found his child being dragged again under new interrogatory
Process by one of the new officers. So, Plaintiff walked to
the Black Officer; **demanded (4th)** him to tell what did his
Child do to any one to be Seized and interrogated by this
intimidating Police Forces.

## II. "He [Plaintiff] has had to be a father and a mother to his son which I believe was Egypt" [PR]

22.    The Black Officer refused to respond to Plaintiff's
demand, and brought the "Mother" into the picture. He
asked Plaintiff what is the child's name; where the
child's mother is now; and where she lives.

23.    Plaintiff responded to the Black Officer that he is an
Egyptian Muslim American; the child carries his name and
Family Name; and the Child is under his Custody; and any
concern about the Child MUST be addressed only to him [The
Father] alone not to the mother.

9

24.    Plaintiff warned the Black Officer that, the Child is
"extremely attached" to him because his mother had sever
Postpartum Depression and was unattached to him; and wanted to
send him to Egypt to be raised by her own mother; Plaintiff
had to become a father and a mother to his Child; and his act
of "Seizing the Child" is now causing great deal of harm and
making the child to suffer in fear of him.

25.    The Black Officer ignored the sensitivity of this issue
and asked Plaintiff again about the mother's name and phone
number. But, Plaintiff repeated to him again that he does not
know her phone number by heart; and, unless he is threatening
Plaintiff to be arrested, "legally" he [Officer] should not
need the mother since the child is already in Plaintiff's
"Legal/Physical" custody now; and **demanded (5ᵗʰ)** [out loud]
again to know what the Officer's "Problem" is.

---

**Fact 3:**

Natick Police Officer is now responding to Plaintiff's 5ᵗʰ Demand
and explains his Constitutional Violation of seizing a child
from his father.

---

I. "When asked of the position in which I observed them" [PR]

26.    At this point the Black Officer angrily raised his right
palm at his face and stated to Plaintiff that he saw the Child
moved his bottom closed to Plaintiff's face!

27.    Plaintiff made sure that he got it right, clear and
confirmed with the Black Officer that "his Legal Issue"
according to "his limited Observation" was, that, the 7 Years
old Child did the above described movement on his own, freely,

10

while the Father was not involved; and was not doing any
suspicious movement at all or violated any Law.

> <u>Fact 4:</u>
>
> Plaintiff explained he has no obligation to deal with The Caller's
> and Black Officer's "Sexual Hallucination" about "Children
> Sexuality" and "Pornographic Perception of Events in Life".

28.    Plaintiff explained that his "Fatherhood" has equal
constitutional and civil rights like any other mother decides
to bring her own children to this State Park. Plaintiff
pointed out to the Black Officer that, <u>it may not be common
practice or even a norm for children to have a "Father" in
some American Culture</u>; however, Plaintiff as an [Arab Muslim
American] has different roll and obligation to his Fatherhood.

29.    Plaintiff stated to the Black Officer that as long as his
Child is enjoying his freedom to be himself and acting his age
on his own freely, he [Plaintiff] owes no one any explanation.

30.    But, the Black Officer disagreed and got angry again; and
shouted out loud at Plaintiff "**Excuse me … it is the parent's
responsibility to teach the child how to behave**"

      I. <u>"He stated that my son is into wrestling"</u> [PR]

31.    Plaintiff again, responded to the Black Officer that this
Cultural Issue of "Behaving" and "Parent's responsibility" are
not part of his Police Job; the child is only 7 years old boy
into wrestling; Plaintiff allows him to enjoy his wrestling
ability with him **at home**. Hence, neither plaintiff nor the
Child has much concern about Officer's ideal behavior in
public; and he is not here to meet any one's expectation.

11

32.     Plaintiff reminded the Black Officer that he [along with the other Officers] had already conducted investigations with the child minutes ago; and asked the Officer "What did the Child tell you about that "Sexual hallucination". But, the Black Officer ignored Plaintiff and refused to respond.

33.     The Black Officer found it more convenient for his constitutional violation to stick to the 9-1-1 Caller's and ·his malicious Sexual Hallucinating observation to Plaintiff's 7 years old Child homosexual tendency acting toward Hispanic Male in his 40's over the boat ramp.

II. "… and lies in his face then farts in his face!"[PR]

34.     Plaintiff told the "Reluctant" Black Officer that he should know better the child's intention [of getting up passing his bottom "accidently" across father's face]; as Far as Plaintiff concerns, whether his child accidently hits him in the face, or fart in the face, he is comfortable with that; and  reminded Officer again that Plaintiff has no obligation to explain his child natural act and "Attachment to him [father] to any one as long as the child is acting his age and himself.

III. "… and told him if this was not appropriate, it was certainly very bizarre behavior" [PR]

35.     The Angry Black man again burst in anger shouting "Excuse me? Fart in your face? My kids do not fart in my face!" then, he started to shout out louder "I do not care how you raise your children in Egypt; that has no room in here. When you bring your child to Public Places in this country, you have to learn how to conduct yourselves."

---

**Fact 5:**

The second Police Investigation with the petrified Child came to confirm, along with the first one, that "9-1-1 Reported Incident" was an "Accident" and established the Fact of "No Wrong Doing"

---

36.   At that point, Officer Kevin approached him whispering in his ear "Roni … Roni … Calm down, I asked the boy if he usually … (inaudible), **he said it was an accident**".

37.   In the presence of Officer Kevin, Plaintiff reminded Black Officer "Every one is different … you are black … he (Officer Kevin) is white … I am not black nor white … I do not think I need to teach my son how your black kids conduct their lives with you; neither I need my son conduct himself to meet the expectation of a sick [sexually disoriented] person".

38.   Plaintiff <u>twice</u> warned the Black officer that his son's name, Plaintiff's Name and the Family name should not be mention in any Public Record [Referring to this wanton Sexual Illusion of the sick 911 caller or his confused Police mission or his pornographic observation; that may be used to harm his reputation and his son's as well in the future].

---

**Fact 6:**

Despite the proof of "No Wrong Doing", plaintiff was ordered to vacate the State Park for the convenience of the 9-1-1 caller(s); and was threatened to loss his Child custody if he was ever seen again with his child!

---

39.   The Black Officer who seemed carless about Plaintiff's concern of Privacy issue, instructed  him to take his child

and leave the State Park immediately in a threatening language
as follow:

**"Now, take your son and leave the park … next time if I ever see
you again, I will take you to the probate court".**

40.    But Plaintiff wondered what he meant by "Probate Court"!
So, he went back to ask the White Police officer "What he
means by Probate Court?" But, the Black Officer volunteered to
respond instead and quickly stated that:

**"This is where you are going to loss your child custody if I see
you next time".**

---

### Fact 7:
Plaintiff's "Citizen Complaint" was investigated but went
unanswered for one full year!

---

41.    On April 1, 2007 Plaintiff immediately went with his son
directly to Natick Police Station and filed "Citizen
Complaint" with Officer Mark St. Hilarie reporting [Exhibit 1]
unacceptable threat to loss the Custody of his son and the
illegal dismissal from State Park; and requested his privacy
to be protected; and warned that there is a Custody issue with
the child's mother [Exhibit 9].

42.    On April 1, 2007 at night time Plaintiff called Natick
Police reporting the Child is [Now] in State of Panic; Crying
and suffering in fear from this Police Officer's Action.

43.    On April 25, 2007 Plaintiff received the Police report
after 24 days of requesting it [Exhibit 2].

44.    Police Report presented the "Probable Cause" in wanton
Malicious Homosexual Explicit description of 6-7 years old

14

Child as a "Porn Star" taking a "LEADING ROLL" in an outdoor porn movie over a Boat ramp.

Example: "Child sat on 5.7 ft tall Hispanic man's chest with his crotch towards the man's face; then, in a later scene The Child [Now] gets up to position himself in a 69 Scene!"

45.   On the other hand, Police Report fabricated the "Due Process" and mentioned the exact opposite of what happened or reported what "Should have happened" as allegedly happened.

46.   . Police Report fabricated phony "Several 9-1-1 Call"; phony Polite Civilized Police Conduct by Black Officer; and phony Police Investigation with the alleged Adult Suspect never took place or took place inappropriately with a child.

47.   On May 26, 2007 Sr. Paul Thompson met with Plaintiff and his child to conduct the investigation on the Citizen Complaint. He acknowledged father's concern and expressed his resentment to the misconduct of Officer Richardson; and indicated to plaintiff that " It is not the first time he heard such complaint on his misconduct"

48.   Sr. Thompson informed Plaintiff that he is going to write his views on both sides of the story and have the Chief of Police review it. The Chief shall be the one who is going to make the "Final Decision".

49.   On November 11, 2007 When Plaintiff did not receive any response to his Complaint, he demanded the Board of Selectmen of Natick to produce the result of their Police Department Investigation on the Citizen Complaint he filed on 4/1/2007.

15

50.    On February 26, 2008 Plaintiff sent another registered letter reminding Chairwoman Carol Gloff that the result of the investigation has not been received; and Plaintiff has not heard any response neither from her nor from her Chief of the Police Department [Exhibit 3].

51.    On February 29, 2008 Plaintiff contacted the office of Congress Edward Markey asking him for action [Exhibit 4].

52.    On March 21, 2008 Plaintiff received the result of the Citizen Complaint investigation after one full year from Chief Dennis R Mannix of Natick Police admitting the Followings:

A. The Negligence in his duty to respond to Citizen Complaint.
B. His Officer Fabricated "Several" reported numbers of 9-1-1 calls that motivated him to "Seize" the Child from the Father.
C. The use of threats under the color of law by his Officer [Calling it "mistake" that was corrected by anther "Mistake/Violation" when referred the "No Wrong Doing incident" to the DSS to damage Plaintiff's Reputation]
D. The Lack of understanding to the Roll of DCF as he thought to be "The More Specialized Investigating Authority that assigned to investigate the Atmosphere Abuse of Natick Boat Ramp".
E. We, "the Citizen" do not have the ability Distinguish between "Vulgar Behavior" and "Police Investigation".
F. The contradiction of his Police Investigation. Since he called it "Properly reported the incident to DSS", while:
   • All three officers had confirmed the "No Wrong Doing";
   • "If" there was any kind of suspected Child Abuse, the child should have never been left to his abuser;
   • All three Police Officers did allow the Child to leave with an alleged "Suspect of Child Abuse" [Exhibit 5].

16

53.   On May 5, 2008 & May 21, 2009 Plaintiff sent 2 registered Letter to the DSS requesting copy of their report on this incident and their "Findings" including the date and the time of Natick Police referral to their Authority. No Response was ever received or contact was ever initiated [Exhibit 6].

---

**Fact 7:**

Plaintiff has been suffering The Consequence of this wanton malicious Police Misconduct against him and his Child as well

---

54.   On May 12, June 5, July 18, July 30 and August 24, 2007 the Child and the father went under Therapy to deal with their anger, fear and humiliation. [Exhibit 8 & 10] And, again in May 2009 when, the mother of the Child, in her Battle to remove the Child Custody to Canada used Natick Police wanton malicious characterization of the child's love to his father as "Negative Factor/Behavior" to raise the "Suspicion" around them and damage their credibility in Child Custody Battle before Single Court and Superior Court Battle [Exhibit 9] DSS page 24 & 25.

END of FACTS

# Analysis and Causes of Action

The Suspicious Character of the 9-1-1 Caller and the History of misconduct of the "Incompetent" African American man hired as a Police Officer in a Town that has only 1.6% Black Residents

## First cause of Action:

Officer Richardson of Natick police acted in a "Natural" willful, wanton and malicious manner in violation of plaintiff's rights under 4th & 14th amendment to USC, 42 USC S1983; and in violation to M.G.L. 272 Sec 98, 265 Sec 37 and 268 Sec 6A.

55.   As a threshold matter, it is clear that the 2 "Elements" caused the loss of Plaintiff's Civil Rights to feel secure and safe to father his child in Public Place, The Sexual Hallucination of 911 caller and The Incompetency of The African American Police Officer:

A. The Character of the Caller(s):
   The only 9-1-1 caller was Sexually Disoriented White Immature Female Tourist; whose Hallucinating thoughts was causing her to think of Plaintiff's 7 years old Boy should be playing with Dolls rather than "Wrestling" with his farther; and "Men as Sperm Donner", they act "Inappropriately" when they get near their Children in Public [Exhibit 2].

B. The "Incompetency" of the Black Officer:

I.   Black Officer "R. Richardson" has "Negative Reputation" between his colleagues and many of Natick Residents as well. That is "Documented" in the number of Citizen Complaints filed against him [Per Sr. Paul Thompson].  His

"Misconduct" has always been blamed on his natural "Deep
Voice, his angry Look and Huge Size" rather than his brutal
nature and the misuse of Police Power to intimidate and
insult Citizens and not following the Due Process.

II.   Officer Richardson exhibited a combination of "Sexual
      Hallucination" deeply influenced by the Multi-Billion
      Dollars Porn Industry with its Product Lines and Product
      Items; and "Mental Incompetency" that led him to believe he
      sees a 7 years old boy was having Sudden "Homosexual
      Desire" to stick his bottom in sexually provocative
      position at his own father's face over a boat ramp.

III.  However, he exhibited his Competency back in re-writing
      event in Police Report when he Fabricated "Verbs",
      "Dialogue" along with his Malicious Wanton Sexual
      Description of the Child's natural interaction with his own
      Father; to justify the act of "Seizure" & "Discrimination"
      against Plaintiff and his Child Based on alleged new
      "Bizarre Sexual Interest" called it "Fart Smelling", not
      Based on their Gender, National Origin [Egypt] and
      Ethnicity [Arab]. [Violation of M.G.L. 272 S98. & 265 S37]

IV.   Officer Richardson threatened Plaintiff to take him to the
      "Probate Court" and asserted his willful threat by telling
      Plaintiff that is the Court that will deprive Plaintiff
      from his Civil Rights using Officer's [Fabricated Sexual
      Hallucination] about his child if he sees Plaintiff again.

V.    Town of Natick, with its 1.6% Black Population, Process of
      Selection and hiring Black Police officer who has been
      establishing strong history of Brutal Violence, Threats,
      False Reporting  and misconduct is "Questionable Behavior".

> The Action of
> Chief of Natick Police as Final Policymaking Authority

## Second Cause of Action:

Chief of Natick police acted in willful negligence and violated plaintiff rights under 4th & 14th amendment to USC, 42 USC S1983, M.G.L. 265 Sec 37 and 268 6A, and in negligence to his power and Duties according to M.G.L. 41 Sec 97A.

56.    Chief of Natick Police willful and intentional failure to respond to citizen complaint promptly was failure to his mission to ensure and guarantee equal protection to all Citizen's Constitutional and Civil Rights without Discrimination, Threats or Intimidation following the Due Process of The Law as evident by the followings:

I.   Chief of Natick Police failed to take adequate action to discipline his subordinate. Instead, he allowed, permitted and approved his subordinate's act to manufacture false Due Process, false Probable Cause and false Process of Investigation; using Plaintiff's Child as a "Suspect" after fitting the Child in an acting roll of Porn Line of products in malicious sexual descriptive sickening details.

II.  Chief of Natick Police exhibited alarming signs of "Contradiction", "Confusion" and "Lack of Training" of his Units when he Constituted the Act of seizing the child by his Incompetent Officer despite his full knowledge of:

  a) The Officer has history of Citizen Complaints filed against his Misconduct and the abuse of his Police Power.
  b) The Officer fabricated "Several" 9-1-1 calls.

20

c) The Officer threatened Plaintiff under the color of law.

d) The Officer forced Plaintiff to leave the Park despite the lack of any evidence to any law violation.

e) The DCF is concerned with Child Abuse prevention, not the Atmosphere abuse prevention of Boat ramps in Natick.

III. Finally, despite plaintiff's several requests to protect his Privacy and Values, Chief of Natick Police intentionally and willfully had "Engaged" the "Threat" of his subordinate to his "Approval of the threat". Calling "Threat" "mistake" does not help clearing the "Public Humiliation" that inflected on plaintiff's ethnicity and values causing it to look odd, bizarre and inferior to false values of false phony callers of 9-1-1 and his African American Officer's ethnic perception of Fatherhood.

---

### The Action of
### Selectwoman Ms. Carol Gloff as Final Policymaking Authority

---

## Third Cause of Action:

Selectwoman of Town of Natick acted in willful Negligence and Violated plaintiff rights under 4th & 14th amendment to USC, 42 USC S1983, M.G.L. 265 Sec 37 and 268 Sec 6A; and in intentional negligence to her duties according to her power granted by M.G.L. 41 97A & 23B as following:

57.    Select woman Ms. Carol Gloff the final Policymaking authority; who is responsible for the process of Planning, Organizing, Leading and Controlling; was granted "Authority" by M.G.L. 41 Sec 23B to Investigate any town department that becomes subject to "Citizen Complaint" particularly when the Complaint is about Police brutality and the use of Oppressive unconstitutional threats.

58.     That fact that her subordinate Chief of The Police apologized to Plaintiff for the one full year delay in his notification of his final decision to find his incompetent subordinate "was mistaken" but, ultimately "acted properly", is leading to one Fact beyond the reasonable doubt that, Selectwoman Ms. Gloff intentionally ignored the Plaintiff request twice to cover her Negligence and Failure to carry out her responsibility to personally investigate this form of Negligence in handling "Citizen Complaints".[M.G.L 41 Sec 23B]


## Final Statement

Although the loss of Civil Rights due to unconstitutional Threat under the color of law is "Intangible Loss Hard to Proof", however, in the foreseeable future this Police Act of [Abuse of Power, Fabrication in Records and Logs, Threats, Negligence, Lack of Training on Standards and Constitutionality, Forcing Sexual Humiliation on Children and their Fathers using incompetent Officer's Hallucinating Observation of inconceivable conduct of 7 years old child], could definitely damage the integrity of Natick Police Department and its honorable mission in the society.


## END of ANAYLSIS

# Conclusion

Providing the above Circumstances in Facts 1-7 and Defendants' Conduct [Black Police Officer Ronald Richardson, Chief of Police and Selectman/woman in Town of Natick] stated in paragraph 1-58, it is unarguable Fact beyond the Reasonable Doubt that Plaintiff's loss of his Constitutional Civil Rights [To have safe and secured access to State Public Park] was engaged with public Humiliation and Unconstitutional Threat under the Color of Law by the Law Enforcement Police Department of Natick [To loss the Custody of His Child]; and due to the lack of adequate Supervisory Lead and Control over "Citizen Complaints" investigation in Natick Town Departments, Plaintiff endured fears and suffering of the past and future loss.

Therefore, the Town and its Police Department acted "Willful Negligence" together in violation of plaintiff's rights under 4th & 14th amendment to USC, 42 USC S1983 and 42 USC 1985 (3); and in violation to M.G.L. 272 Sec 98, 265 Sec 37 and 268 Sec 6A; and in negligence to their Powers and duties according to M.G.L. 41 Sec 23B, 97A and 268 Sec 6A.

## END OF CONCLUSION

# PRAYER FOR RELIEF

59. As a direct foreseeable consequence of all the above deprivations of plaintiff's rights under the Fourth and Fourteenth Amendments to the United States, plaintiff has suffered emotional trauma, loss of liberty, loss of privacy and reputation that is impacting him to struggle with mental distress directly and indirectly reflected on his economic and psychological status.

60. Because the Defendants' policies, customs, practices, and supervisory negligence, the risk of irreparable injury to other persons in Town of Natick, Plaintiff seek the entry of an Order and Permanent Injunction, as set forth in further detail below, to protect all persons equally and to prevent such misconduct from ever happening again.

Plaintiff herby requests the following relief:

A) Damages in an amount to be established at trial as compensation for constitutional deprivations; psychological harm; emotional trauma, economic loss; loss of privacy, and endangering reputation initiated and sustained by Defendants' unlawful conduct;

B) Damages in an amount to be established at trial to punish Defendant for intentional conduct pursued out of actual malice that recklessly and callously disregarded and was deliberately indifferent to Plaintiffs' constitutional rights, to discourage them from engaging in similar conduct in the future, and to

24

deter others similarly situated from engaging in
similar misconduct;

C) An award for reasonable and customary costs, and
   expenses incurred in pursuit of this action; and
   whatever additional relief the Court may deem proper.

E) The issuance of an Order and Permanent Injunction
   ("Permanent Injunction") that:

I.  Chief of Police to provide his subordinate with mandatory
annual proper training that requires passing an exam covers all
proper procedure in various respects relating to the appropriate
conduct of Civil investigations, including by way of example:
   A. The conduct of eyewitness identification procedures.
   B. Prohibiting threats and intimidation.
   C. The standards for police reports, investigator's notes,
      and timely and truthful preparation of such documents.
   D. Definitions of Child Abuse, Neglect and Mature Child as
      defined in DCF 110 CMR.
   E. Appropriate Language used in Child Investigation; the
      Standards for Probable "Abuse" as defined in M.G.L.
      209A [Abuse] and 119 [Protection of Children]

II. Board of Selectmen in Town of Natick to establish a Police
Review Committee, which shall review and hear Citizen complaints on
misconduct against Natick Police personnel and make recommendations
Quarterly to the Board on how Complaints should have been handled
to the satisfaction of the reporter; and to ensure the Prohibition
of threats, ethnic insults, and intimidation of any race, gender
and national origin.

# ADDENDUM

# TABLE OF AUTHORITIES

Department of Children & Families          01-01

M. G. L.                                   02-04

U. S. C. Federal Law                       05-06

110 CMR: DEPARTMENT OF CHILDREN AND FAMILIES

110 CMR 2.00: GLOSSARY
Whenever used throughout 110 CMR, the following
words shall have the following meanings, unless the
context plainly requires otherwise.

Abuse means the non-accidental commission of any
act by a caretaker upon a child under age 18 which
causes, or creates a substantial risk of physical
or emotional injury, or constitutes a sexual
offense under the laws of the Commonwealth or any
sexual contact between a caretaker and a child
under the care of that individual. Abuse is not
dependent upon location (i.e., abuse can occur
while the child is in an out-of-home or in-home
setting.)

Mature Child means a child who is able to
understand the circumstances and implications of
the situation in which he/she is involved and is
able to participate in the decision-making process
without excessive anxiety or fear. A child who is
14 years of age or older is presumed to be a mature
child.

Neglect means failure by a caretaker, either
deliberately or through negligence or inability, to
take those actions necessary to provide a child
with minimally adequate food, clothing, shelter,
medical care, supervision, emotional stability and
growth, or other essential care; provided, however,
that such inability is not due solely to inadequate
economic resources or solely to the existence of a
handicapping condition. This definition is not
dependent upon location {i.e., neglect can occur
while the child is in an out-of-home or in-home
setting.)

1

# M.G. L.

**M.G.L.: Chapter 41: Section 97A. Police departments; chief of police; powers and duties**

Section 97A. In any town which accepts this section there shall be a police department established by the selectmen and such department shall be under the supervision of an officer to be known as the chief of police. The selectmen of any such town shall appoint a chief of police and such other officers as they deem necessary, and fix their compensation, not exceeding, in the aggregate, the annual appropriation therefore. In any such town in which such appointments are not subject to chapter thirty-one, they shall be made annually or for a term of years not exceeding three years, as the selectmen shall determine, and the selectmen may remove such chief or other officers for cause at any time after a hearing. The chief of police in any such town shall from time to time make suitable regulations governing the police department, and the officers thereof, subject to the approval of the selectmen; provided, that such regulations shall become effective without such approval upon the failure of the selectmen to take action thereon within thirty days after they have been submitted to them by the chief of police. The chief of police in any such town shall be in immediate control of all town property used by the department, and of the police officers, whom he shall assign to their respective duties and who shall obey his orders. Section ninety-seven shall not apply in any town which accepts the provisions of this section. Acceptance of the provisions of this section shall be by a vote at an annual town meeting.

**M.G.L.: Chapter 41: Section 23B. Town departments; investigations and reports**

Section 23B. The selectmen of any town may make an investigation into the conduct and operation of any town department. Upon completion of such investigation a report shall be submitted to the town clerk and such report shall be printed in the annual town report

M.G.L.: Chapter 265: Section 37. Violations of
constitutional rights; punishment

Section 37. No person, whether or not acting under color of
law, shall by force or threat of force, willfully injure,
intimidate or interfere with, or attempt to injure,
intimidate or interfere with, or oppress or threaten any
other person in the free exercise or enjoyment of any right
or privilege secured to him by the constitution or laws of
the commonwealth or by the constitution or laws of the
United States. Any person convicted of violating this
provision shall be fined not more than one thousand dollars
or imprisoned not more than one year or both; and if bodily
injury results, shall be punished by a fine of not more
than ten thousand dollars or by imprisonment for not more
than ten years, or both.


M.G.L.: Chapter 268: Section 6A. False written reports by
public officers or employees

Section 6A. Whoever, being an officer or employee of the
commonwealth or of any political subdivision thereof or of
any authority created by the general court, in the course
of his official duties executes, files or publishes any
false written report, minutes or statement, knowing the
same to be false in a material matter, shall be punished by
a fine of not more than one thousand dollars or by
imprisonment for not more than one year, or by both such
fine and imprisonment.

M.G.L.: Chapter 272: Section 98. Discrimination in admission to, or treatment in, place of public accommodation; punishment; forfeiture; civil right

Section 98. Whoever makes any distinction, discrimination or restriction on account of race, color, religious creed, national origin, sex, sexual orientation, which shall not include persons whose sexual orientation involves minor children as the sex object, deafness, blindness or any physical or mental disability or ancestry relative to the admission of any person to, or his treatment in any place of public accommodation, resort or amusement, as defined in section ninety-two A, or whoever aids or incites such distinction, discrimination or restriction, shall be punished by a fine of not more than twenty-five hundred dollars or by imprisonment for not more than one year, or both, and shall be liable to any person aggrieved thereby for such damages as are enumerated in section five of chapter one hundred and fifty-one B; provided, however, that such civil forfeiture shall be of an amount not less than three hundred dollars; but such person so aggrieved shall not recover against more than one person by reason of any one act of distinction, discrimination or restriction. All persons shall have the right to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, resort or amusement subject only to the conditions and limitations established by law and applicable to all persons. This right is recognized and declared to be a civil right.

# Amendments to USC

## Amendment IV

The right of the people to be secure in their persons,
houses, papers, and effects, against unreasonable searches
and seizures, shall not be violated, and no warrants shall
issue, but upon probable cause, supported by oath or
affirmation, and particularly describing the place to be
searched, and the persons or things to be seized.

## Amendment XIV

Section one all persons born or naturalized in the United
States, and subject to the jurisdiction thereof, are
citizens of the United States and of the state wherein they
reside. No state shall make or enforce any law which shall
abridge the privileges or immunities of citizens of the
United States; nor shall any state deprive any person of
life, liberty, or property, without due process of law; nor
deny to any person within its jurisdiction the equal
protection of the laws

# Title 42 - Civil Rights

**Sec.1983: Civil Action for Deprivation of Rights**
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**Sec.1985: (3) Depriving persons of rights or privileges**
If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

**Commonwealth of Massachusetts**
**County of Middlesex**
**The Superior Court**

CIVIL DOCKET # MICV2009-04707-F

RE: Elaskalani v Town of Natick et al

Courtroom Civil F - Ct Rm 510- 200 TradeCenter, Woburn

TO: Yasser Elaskalani
1321 Worcester Road
Framingham, MA 01701

## SCHEDULING ORDER FOR A TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated, and case shall be resolved and judgment shall issue by **11/17/2012**

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | 03/03/2010 | 03/03/2010 | |
| Response to the complaint filed (also see MRCP 12) | | 04/02/2010 | |
| All motions under MRCP 12, 19, and 20 | 04/02/2010 | 05/02/2010 | 06/01/2010 |
| All motions under MRCP 15 | 01/27/2011 | 02/26/2011 | 02/26/2011 |
| All discovery requests and depositions served and non-expert depositions completed | 11/23/2011 | | |
| All motions under MRCP 56 | 12/23/2011 | 01/22/2012 | |
| Final pre-trial conference held and/or firm trial date set | | | 05/21/2012 |
| Case shall be resolved and judgment shall issue by 11/17/2012 | | | 11/17/2012 |

- The final pre-trial deadline is not the scheduled date of the conference.
- You will be notified of that date at a later time.
- Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

Dated: 12/03/2009

Michael A. Sullivan
Clerk of the Court

Telephone: 781-939-2769

# APPENDIX of EXHIBITS

Ex 1: Citizen Complaint Form            01-01

Ex 2: Natick Police Incident Report        02-05

Ex 3: 1st Request to Board of Selectmen    06-06
       2nd Request to Selectwoman of Natick    07-07

Ex 4: Letter to Congressman Ed Markey     08-08

Ex 5: Response to Citizen Complaint
       [From Chief of Natick Police]         09-10

Ex 6: 1st Request for Copy of DSS Report    11-13
       2nd Request for Copy of DSS Report    14-15

Ex 7: Copies of Certified Mail Receipts     16-16

Ex 8: Medical Records/Receipts           17-20

Ex 9: Copy of DSS Report of May 2009      21-25

Ex 10: Child Complaint to Abraham Lincoln    26-27

# NATICK POLICE DEPARTMENT
## CITIZENS COMPLAINT FORM

Case

07 - 437 - 0F

| CASE NO. | PLEASE TYPE OR PRINT | TYPE OF COMPLAINT: |
|---|---|---|
| | | PHYSICAL ABUSE ☐  VERBAL ABUSE ☑  OTHER ☐ |

**DATE OF OCCURENCE**

**TIME OF OCCURENCE**   **LOCATION OF INCIDENT (No. Street)**

**COMPLAINANT (Last, First, MI)**  Kaiser

**ADDRESS (No. Street, City & State)**  133

**PHONE (Home & Business)**

| AGE | D.O.B. 1 - 12 - 60 | SEX  M ☑  F ☐ |
|---|---|---|

**DATE OF COMPLAINT**  4/11/07   **TIME OF COMPLAINT**

**HOW COMPLAINT RECEIVED:**  IN PERSON ☐   TELEPHONE ☑   MAIL ☐   OTHER ☐

**NARRATIVE:**

_(handwritten narrative — illegible)_

| NAME OF EMPLOYEE COMPLAINED AGAINST | BADGE NO. | SHIFT ASSIGNMENT |
|---|---|---|
| **OFFICER RECEIVING COMPLAINT SIGNATURE** | **TOUR OF DUTY** | |
| **SUPERIOR OFFICER ASSIGNED TO INVESTIGATE COMPLAINT** | | |

**COMPLAINT STATUS: (circle one)**   UNFOUNDED   NOT SUSTAINED   EXONERATED   SUSTAINED

| INTERNAL AFFAIRS NOTIFIED:  YES ☐   NO ☐ | PERSON NOTIFIED | DATE NOTIFIED |
|---|---|---|
| **SIGNATURE OF COMPLAINANT** X | | DATE 4/11/07 |

**COPY DISTRIBUTION:**
WHITE – Chief of Police     YELLOW – Internal Affairs     PINK – Officer     GOLDENROD – Complainant

NPD Form 1050     Last Update 10/1/99

# *Town of Natick*
# *Police Department*



April 24, 2007

Dear Sir/Madam,

This Department is in receipt of your request for records relating to an incident that occurred in Natick on April 1st, 2007. Certain portions of these records are exempt from public disclosure under Exemption C of the Public Records Law, M.G.L. c. 4, Sec. 7(26). We can therefore only provide you with a sanitized version of the report.

Exemption C applies to "...personnel and medical files or information; **also, any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy."**

You have the right to appeal this decision to the Supervisor of Public Records at the Office of the Secretary of the Commonwealth, State House, Room 337, Boston, Mass. 02133, as provided in the law.

Yours truly,

Lt. Brian C. Grassey
Records Supervisor

20 East Central Street Natick, Massachusetts 01760 Tel: (508) 647-9500 Fax: (508) 647-9509

Page: 1
04/19/2007

## Police Department
## Incident Report

Incident #: 07-437-OF
Call #: 07-5034

Date/Time Reported: 04/01/2007 1516
Report Date/Time: 04/01/2007 1639
Occurred Between: 04/01/2007 1500-04/01/2007 1530
Status: No Crime Involved
Involves: Juveniles
Reporting Officer: OFFICER RONALD RICHARDSON
Assisting Officer: OFFICER KEVEN KELLEY
Approving Officer: LIEUTENANT BRIAN GRASSEY

Signature: _____

| # | INVOLVED | SEX | RACE | AGE | SSN | PHONE |
|---|----------|-----|------|-----|-----|-------|
| 1 | | M | W | 47 | | |

FRAMINGHAM MA

HEIGHT: 507    WEIGHT: 200                    HAIR: UNKNOWN OR COMPLETELY BALD    EYES: BROWN
BODY: STOCKY                          COMPLEXION: MEDIUM
DOB: 01/12/1960                  PLACE OF BIRTH: NOT AVAIL.
LICENSE NUMBER: MA 506161016              ETHNICITY: NOT HISPANIC

[CONTACT INFORMATION]

Home Phone      (Primary)      508-872-1790

[APPEARANCE]

GENERAL APPEARANCE: ORDERLY

SHIRT: PULLOVER - SHORT SLEEVE
PANTS/SKIRT: UNSPECIFIED PANTS/SKIRTS
SHOE: JOGGING SHOES
GLASSES WORN: NO

| # | EVENTS(S) |
|---|-----------|

LOCATION TYPE: Lake/Waterway          Zone: Area A
COCHITUATE STATE PARK
11 COMMONWEALTH WEST RD
NATICK MA 01760

1  SUSPICIOUS BEHAVIOR

3

NARRATIVE FOR OFFICER RONALD D RICHARDSON

Ref: 07-437-OF

_____

Dictated by Officer Richardson
Transcribed by MC

At approximately 1516 hrs on Sunday, April 1st, 2007, this officer was dispatched to a report of inappropriate behavior at the boat ramp. The subject involved was stated to be a Hispanic male, approximately 5'7, wearing dark colored jeans and a tan top. It was further told that the reporting parties were in a vehicle observing that subject at the time. It was stated also that there was a young child involved.

Arriving at that location, I was flagged down by the reporting parties; two females sitting in Toyota Camry, silver in color. The passenger identified herself as the calling party. I noted that to my right, at the end of a dock which was extending out into the water, I saw a white male lying on his back with his feet extended out towards the water. Seated near him was a young child of approximately 6 or 7 years old.

While talking to the reporting party, I watched the child and the man. XXXXXXXXXX stated that the man had been on the dock by himself for a while, approximately 10 minutes, and the child was seated in the car of the parking area. The vehicle was a four-door sedan, bearing MA Reg. #74KP63. This officer noted nothing regarding the vehicle of interest. XXXX XXXXXX and the other occupant, XXXXXXXXXXX, stated that the man was lying on the dock for a while, and after approximately 10 minutes he called to the child to come to the dock where the man was sitting. She said while they observed this subject, the young child sat on the man's chest with his crotch towards the man's face. While this officer listened to this account, he observed the child now get up and lay on top of the man. The position of his legs in posterior, being near the face of the man and could not tell exactly where the child's face was.

At this time I started to walk towards the position of the aforementioned parties, calling out to the young boy for him to get up and come towards me. I called out several times before these two people, the child and the man, acknowledged me. The child came towards me and I asked him if he was ok. I asked him if he had been touched in a wrong place, and he stated no, that he had not. At this time the man angrily stepped towards me and asked me what I was doing. I told him to calm down. I asked for his license and registration and he again demanded me to tell him what I was doing. I told him that we received several phone calls as to what ~~was~~ was deemed inappropriate behavior and I was there to investigate. I asked the man to lower his voice. At this time he gave me his license, identifying him as XXXXXXXXX of XXXXXX

NARRATIVE FOR OFFICER RONALD D RICHARDSON

Ref: 07-437-OF

XXXXXX apartment 305. He stated that the young boy was his son, XXXXXXX, who answered to the name of XXXXXX XXXXXXXX, when asked of the positions in which I observed them, stated that his son is into wrestling and lies in his face then farts in his face. At this time I said, "Excuse me?" He answered me again. He stated, "He farts in my face and I smell them." I looked at XXXXXXXX and told him that if this was not inappropriate, it was certainly very bizarre behavior. XXXXXXXXXXXXXXXXXX XXXXXXXXXX The wife is stated to live at XXXXXX her name being XXXXX He states that he has had to be a father and a mother to his son, XXXXXXXXXXXXXXXXXXXXXXXXX to the homeland, which I believe was Egypt.

Arriving on scene was Officer Kevin Kelley of the Natick Police, as well as a Wayland officer. Officer Kelley spoke to the boy who again confirmed that he had not been touched in an inappropriate matter. In the presence of both officers, I explained to XXXXXXXXXXXX that his behavior was inappropriate at best, and not conducive to the atmosphere of the boat ramp. He was then instructed to leave the area at this time.

END OF REPORT

DEC. 11. 2009  1:57PM   M. H. T. &L. LLP                              NO. 7364   P. 47   Exhibit (

November 11, 2007

"Citizen Complaint"

Board of Selectmen
13 East Central Street
Natick, MA 01760

Ref: Police Report dated 04/19/2007
Incident #:07-437-OF Call#: 07-5034
Date/Time Reported: 04/01/2007

Dear Madam/Sir:

On Sunday April 1, 2007 I filed a Citizens Complaint Form at Natick Police Department addressing aggressive, vicious, brutal, humiliating and irresponsible police misconduct against my seven years old son Hossam Elaskalani and myself as well.

Briefly, in a very hysterical move officer Ronald Richardson shouted at my 7 years old child, separated him away from me violently then, interrogated him with unnecessary filthy language.
He humiliated my son in my presence without my consent to approach him and before I was even asked to introduce myself and my relationship to my son.
Officer Ronald Richardson forced me and my son to leave the Public Park and threatened me to be arrested and taken to the Probate Court if he ever sees me again with my son. More importantly, I was never addressed by any of the Police Officers with Natick Police Department concern or told why 3 Police Officers with 3 Police Cruisers are here.

Right after the incident, I went to file a complaint at the Police Station of Natick with Officer Mark St. Hilarie (Copy Attached) then, waited 25 days to receive the Public Record of the Police Report (Copy Attached).

Then, 56 days later I met with Sr. Paul Thompson who was assigned to investigate my complaint and spent almost two hours carefully listening to my concern.
*Sr. Paul Thompson who handled the complaint in a very professional manner told me the next step shall be raising his report of the two sided story to the Chief of the Police Department who should make the final decision.*

Since then, I have not heard from Natick Police Department how my complaint is handled.

6

February 26, 2008

Town of Natick
Board of Selectmen
13 East Central Street
Natick, MA 01760

Attn. Carol Gloff, Chairwoman
    Charles Hughes, Vise Chair

Reference: Police Report dated 4/19/2007
Incident#: 07-437-OF Call #: 07-5034
Date/Time Reported: 04/01/2007

Dear Ms. Chairwoman Carol Gloff and Mr. Charles Hughes:

On November 11, 2007 I mailed Natick Town Board of Selectmen a "Citizen Complaint"
asking for restoration of the dignity and civil right of my 7 years old son Sam Elaskalani
who was insulted humiliated and interrogated like a criminal by Natick Police Officer
Ronald Richardson with filthy language. We were forced to leave Cotchituate Park of
Natick and threatened by Officer Richardson if he ever sees "Us" again he shall take me
to the probate court and per his saying "Where you are going to loss the custody of your
child"!
Officer Ronald Richardson was very confident of his words of threat as well his act of
our dismissal from the Public Park.

Until this day I have NOT received the result of the investigation of my "Citizen
Complaint" or I got any response to the letter I sent you on November 11, 2007.

Since Natick police department directly reports to your board and has ignored my
demand, would you please review and approve the result of the investigation conducted
by Sr. Paul Thompson then, send me your decision or findings explaining the "Legal
Ground" of our dismissal from Cotchituate Public Park of Natick.

Please accept my apology for any inconvenience caused by this demand. This issue is
about "The Family is the Cell of the Community"; when one cell is attacked, the whole
body should take the defensive position and my 7 years old son was attacked.

Sincerely

Yasser Elaskalani
1321 Worcester Road – Apt. 305
Framingham, MA 01701

February 29, 2008

## Citizen Complaint

Congressman Edward J. Markey
2108 Rayburn House Office Building
Washington, DC 20515

Dear Congressman Markey,

*On April 1, 2007* I went to Natick police station with my 7 years old son to file a Citizen Complaint with Officer Mark St. Hilarie against Natick Police Officer Ronald Richardson who on that day insulted, humiliated my child and interrogated him like a criminal using his filthy language. Then, he called for two more cruisers from the town of Wayland to further enforce his brutal attitude on my 7 years old child who looked around himself to find 3 police men in there uniform each coming with his own cruiser isolating him from his only protection in his little world. What was the crime he committed? ... He was having relaxing quality time with his own father over a boat ramp in Cotchituate Lake of Natick where over 20 cars were parking next to his father's car; but only one of these cars were occupied by 2 women decided to employ the police force of 2 towns to instruct us to leave the park after putting my child through "Psychological Trauma"

*On April 25, 2007* I received a copy of the police report full of lies and defamation to my son and to me as well reported by Officer Roland Richardson claiming that I told him I brought my child to the boat ramp of Cotchituate Park of Natick to fart in my face because I like to smell it!

*On May 26, 2007* I brought my son to meet with Sr. Paul Thompson who was assigned to conduct the investigation. I demanded an apology to my son from the chief of the police department and if my son or my name is going to be mentioned in this public record I would like to see a clean police report reflect the level of respect this police department owes to its citizens.
Sr. Thompson explained that he shall pass the result of this investigation to the Chief who shall deliver the final decision.

*On November 11, 2007* I sent a registered letter to the Board of Selectmen of Natick repeating the same demand to restore the dignity and the civil rights of my American Born child.


Until this moment I have not heard the result of the investigation or contacted by the proper authority neither by Natick Police nor The Board of Selectmen of Natick Town.



Dennis R. Mannix
Chief of Police

**Town of Natick**
**Police Department**

March 21, 2008


Mr. Yasser Elaskalani
1321 Worcester Street – Apt. 305
Framingham, MA  01701

Dear Mr. Elaskalani:

I write to respond to your letter to the Board of Selectmen in
Natick relative to allegations filed against a Natick Police Officer
with whom you had some interaction with in April 2007. In
reviewing the record of the investigation, I find the investigation
was completed, but you were never notified of its findings.  I
apologize for the delay in notification.

The investigation revealed that on April 1, 2007, Officer Ronald
Richardson responded to a report of suspicious behavior
alleged to be occurring on the dock at Cochituate State Park.
Upon arrival, and after speaking with the reporting party, Officer
Richardson approached you and began his investigation. After
listening to your explanation of the interaction between your son
and you, Officer Richardson formed the opinion that the incident
should be reported to a more specialized investigating authority.
Although Officer Richardson indicated that authority as the
Probate Court, he was mistaken and the case was ultimately
referred to the Commonwealth of Massachusetts Department of
Social Services for investigation.

The allegation that the officer called to your son in a "very deep
voice scaring [your] son," and ordering you to stay where you
were, while perhaps intimidating to you and your son, does not
rise to the level of a sustainable complaint. Officers' voice
inflection varies greatly, depending on the type of investigation
being conducted and the circumstances presented.


20 East Central Street Natick, Massachusetts 01760 Tel: (508) 647-9511 Fax: (508) 647-9509

As to the allegation that the officer acted improperly in the manner in which he investigated your complaint, I find that the officer acted properly in separating you and your son while he conducted his investigation and properly reported the incident to the Department of Social Services for further investigation.

Sincerely,

*Dennis R. Mannix*

Dennis R. Mannix
Chief of Police

C:     Town Administrator Martha White
       Officer Ronald Richardson
       07-08-IA file


DRM/fma

May 5, 2008

*"Request for copy of DSS Report"*

The Commonwealth of Massachusetts
Executive Office of Health and Human Services
Department of Social Services - Framingham Office
63 Fountain Street
Framingham, MA 01702

Reference: Incident on April 1, 2007 involved my 7 years old son Hossam Elaskalani

Dear Madam/Sir:

Enclosed, please find copy of the letter I received from Chief Dennis R. Mannix of
Natick Police indicating that the *"Incident"* on April 1, 2007 involved my 7 years old son
was ultimately referred to your Department as *"Specialized Investigating Authority"*.

On April 1, 2007 my son was interrogated by:
- The assigned Police officer who reported to State Public Park to *"Investigate"* the
  *"Incident"* with the *"Several" 911 callers.*
- Two more Police officers from Wayland Police who joined Natick Police in a
  matter of 5 minutes soon after I questioned Natick Police Officer 5 times....
        *"Why are you yelling at my child...What is your Problem?"*
But, it seems the findings of the Police "Interrogation were not *"Decisive"* enough. So,
my son and I were ordered to leave the park and *"Threatened"* to be taken to the
*"Probate Court"* if Natick Police *"Ever sees me/us again"!* Which was later explained in
the referenced letter that was not a *"Threat"* but rather, it was a *"Standard Operation
Procedure"* for this *"Type"* of *"Investigation"* after what is called *"Forming the
Opinion"* on what should be done next in similar *"Circumstances Presented"*.

Although I had 2 hours meeting with Sr. Paul Thompson on May 26, 2007 who was
assigned to investigate my *"Citizen Complaint"*, I was never told with such referral.

Hence, referring this "Incident" to your Authority for further investigation could be
interpreted in different significant meanings based on how your Authority defined:
1st: *The Circumstances Presented*
2nd: *The Collateral(s)*
3rd: *The Protective Concern(s)*
4th: *The Relevant Information*

My previous interaction with your Department assures me *"DSS Does Not Lie"* when
conducting business. I also appreciate your dedicated efforts in conducting *"Thorough
Investigation"* when I asked for your assistance when my wife made false allegation
against me *(Though my concern was protecting my Son from his Mother who threatened
to kill him when he was infant due to her Mental Illness Not protecting his Mother from
harming herself)*.
[Please, see your report on 7/11/2003 Dated March 4, 2004]

Taking into consideration the Critical Work Nature of your Department along with the Risky Mission of The Police Department, making intentional/unintentional mistakes during the process of your and their investigation can bring disasters on our quality of life if it did not cause a loss of life in some instances.

Hence, *Accuracy in Government Reporting* should never be an *"Option"* left to the *"Incidental Personal Trait"* of the investigator and has to be *"Established"* first before these reports become *"Public Records"* or used in courts.

Accordingly, I would like to exercise my right to protect my child's best interest and rights to prevent any potential harm, humiliation, psychological damage and abuse from any legal/illegal authority intentionally/Unintentionally exposing him to sexually oriented culture(s) violate not only our values and religious believe but also the Law of Natural.

Please forward me the *"Report"* of your *"Findings"* on this case including some imperative information:

1. The exact date and the Time of reporting this *"Incident"* to your Authority by Natick Police and the date of action taken on your behalf.
2. If you were aware of filing *"Citizen Complaint"* and the *"Phone Call"* to Natick Police at the night of the incident by the Biological Father of the child reporting *"Police Brutality"* against his 7 years old son as *"Relevant Information"*.
3. What are the exact wordings of the questions asked by the two police officers to find out about the nature of the alleged *"Inappropriate Suspicious Behavior"*? [Please note my son does not have any memory if this Type of Questions he was asked and that is a Psychological Alarming Sign to me as a father]
4. If Natick Police chose not to inform me of this *"Referral"* until 355 days after the incident, why I was never been contacted by your authority back then?

For further *"Relevant Information"* and *"Completion"* on this *"Referral"* please contact the following Doctor(s) whom I seek *"Treatment"* for my son:

Psychiatrist Dr. Amjad Bahnassi, MD *(Recommended having him seen by Psychologist)*
202 Russell Street - Worcester, MA 01609
Telephone: 508-753-5554
Date of Visit: 5/12/07

Psychologist Dr. C. Paula Krentzel, Ph.D. *(Recommended Dr. Harvey for better result)*
14 Vernon Street – Framingham, MA 01701
Telephone: 508-872-01701
Date of Visit: 6/05/07

**Psychologist Dr. Michael A Harvey, Ph. D., A.B. P.** *(Treatment required 3 visits)*
200 Lockland Avenue – Framingham, MA 01701
Telephone: 508-872-9442
Date of Visit: 7/18/07, 7/30/07 & 8/24/07

Dr. Harvey who had extensive conversation with me and my son during 3 Visits to his office should be able to better explain to your department in an academic language why my 7 years old son on August 24, 2007 after 146 days of his interrogation with *"Language"* he never speaks, spent 15 minutes crying struggling to answer 2 significant questions asked by Dr. Harvey ...

*Dr. Harvey: "How did you feel when the police approached you?"*
*My Son: …. (In tears)…I was afraid they take me to Jail….*

*Dr. Harvey: "Are you afraid of The Police?"*
*My Son: No … Only Natick Police.*

I do appreciate your efforts and I hope you understand that my son is *"Extremely"* attached to me because I am the only one in life who showed him TLC in his early difficult development. How he expresses his love to his father should not offend any normal human being who understands what it means to have a *"FATHER"*.

*Sincerely*



*Yasser Elaskalani*
*1321 Worcester Road Apt. 305*
*Framingham, MA 01701*

Enclosure
- *Police report dated April 24, 2007*
- *Letter from Chief of Natick Police dated March 21, 2008*
- *DSS repot dated March 4, 2004*
- *Doctors office visits confirmations*
- *Letter from my son to "Abraham Lincoln"*

May 21, 2009


The Commonwealth of Massachusetts
Executive Office of Health and Human Services
Department of Social Services - Framingham Office
Attn. Joyce Nardine, Area Director
63 Fountain Street
Framingham, MA 01702

Reference: Yasser Elaskalani Reported Child abuse on May 12, 2009 with DSS.

Dear Ms. Nardine:

I am writing you this letter to follow up on my meeting with Nancy the DDS intake on
May 12, 2009 who ended her short meeting with me saying "Good Luck".
I made it clear to Nancy as well as I am confirming to you in writing this registered mail
letter that I do NOT rely on luck when it comes to the mental and physical safety of my
son who is American Citizen and has no other mean to protect himself from his mother's
mental illness and odd behavior that is tied to Cult believes and practiced by her family.



I left your office after I made sure Nancy understood my expectation from reporting to
DSS of Framingham the authorized government agency that should NOT rely on Luck,
Gender or Incidental Personal Trait of the "Collateral" or the "Reporter" to protect
Children. I need to establish facts of what exactly happened to my child to protect him.

14

Dear Ms. Nardine, to wrap up this issue, I came to your office on 5/12/09 to:

*1st: Request* -for the 2nd time- DSS legal records on my son incident with Natick Police officer on 4/1/2007 (Officer Richardson violated our Civil Rights, did not follow the due process of the law then, covered up his misconduct by falsified Police Report/Records)

*2nd: Report*

I came asking for equal protection of the law with disregard of our gender and ethnicity hoping for accurate investigation equal to the one applied to female children who are similarly situated so I can provide my son with safe mental and physical environment.

It took Natick Police one full year to respond to my Citizen Complaint, but not responding was never an option to access government public services and records.

Please contact me if you need to confirm any evidence needed to establish the facts.

*Respectfully,*


*Yasser Elaskalani*
*1321 Worcester Road Apt. 305*
*Framingham, MA 01701*
508-872-1790 Home
508-308-72-88 Cell









Michael A. Harvey, Ph.D., A.B.P.P.
Diplomate in Clinical Psychology
200 Lockland Ave
Framingham, MA 01701
508 872 9442
508 620 1478 (fax)
mharvey2000@comcast.net
www.michaelharvey-phd.com

August 27, 2007

Yasser Elaskalani
Commercial Loan Generalist
Cambridge Savings Bank
626 Massachusetts Ave.
Arlington, MA 02476
(617) 575-8505 ph
(617) 441-4125 fx

Dear Mr. Elaskalani,

This letter is to confirm that we met for a psychotherapy appointment on 8/24/2007.

Sincerely,

S

Michael A. Harvey, Ph.D., A.B.P.P.
Diplomate, Clinical Psychology

DEC. 11. 2009  2:00PM    M. H. T. &L. LLP                                      NO. 7364    P. 59



MAGELLAN
HEALTH SERVICES®
*Getting Better All the Time*

May 15, 2007

RE: Hossam Elaskalani
DOB: 06/22/1999
ID#: XXXXXXX3110
Case: 028T7Q-000
Provider: Bhvrl Hlthcare Svc
Start Tx Date: 05/12/2007

0178702000-12
HOSSAM ELASKALANI                          **01787
1321 WORCESTER RD APT 305
FRAMINGHAM MA 01701-8918

Dear Hossam Elaskalani:

Magellan Behavioral Health, a subsidiary of Magellan Health Services (Magellan) has been authorized by Blue Cross Blue Shield of Massachusetts to administer its Managed Behavioral Health Program. As such, we are responsible for reviewing behavioral health and/or substance abuse treatment to ensure that it is medically necessary and appropriate for payment purposes.

We have authorized the following Outpatient treatment subject to any eligibility, benefits, coverage provisions, and benefit limitations under the health plan. The ultimate decision regarding claim payment will be made at the time services are rendered based on benefits, eligibility, coverage, and benefit limitations in effect at the time.



| Procedure | Units | From | To |
|---|---|---|---|
| 90801 Diagnostic Interview Exam | 1 | 05/12/2007 | 05/11/2008 |

If you believe additional services are necessary they must be pre-authorized. To request additional services, please have your provider complete and submit a Treatment Request Form to: Magellan Health Services, 217 Middlesex Turnpike, Burlington, MA 01803, two weeks prior to the last authorized service.

If you have any questions regarding this information, please contact Magellan at 1-800-444-2426.

Sincerely,

Care Management Department
028T7Q-000

Similar Notice Sent To:
Bhvrl Hlthcare Svc

18

DEC. 11. 2009  2:00PM   M. H. T. &L. LLP                                NO. 7364   P. 60



June 5, 2007

RE: Hossam Elaskalani
DOB: 06/22/1999
ID#: XXXXXXX3110
Case: 02BZ5B-000
Provider: C Paula Krentzel
Start Tx Date: 06/05/2007

0101602000-8
HOSSAM ELASKALANI                    **01016
1321 WORCESTER RD APT 305
FRAMINGHAM MA 01701-8918
|ll...mllll..dll....lllhldl.l...llllhl.l.l.llhl..ll

Dear Hossam Elaskalani:

Magellan Behavioral Health, a subsidiary of Magellan Health Services (Magellan) has been authorized by Blue Cross Blue Shield of Massachusetts to administer its Managed Behavioral Health Program. As such, we are responsible for reviewing behavioral health and/or substance abuse treatment to ensure that it is medically necessary and appropriate for payment purposes.

We have authorized the following Outpatient treatment subject to any eligibility, benefits, coverage provisions, and benefit limitations under the health plan. The ultimate decision regarding claim payment will be made at the time services are rendered based on benefits, eligibility, coverage, and benefit limitations in effect at the time.

| Procedure | Units | From | To |
|---|---|---|---|
| 90801 Diagnostic Interview Exam | 1 | 06/05/2007 | 06/04/2008 |
| 90806 Ind Tx W/o Med Eval/mgt-45-50 Min. | 11 | 06/05/2007 | 06/04/2008 |

If you believe additional services are necessary they must be pre-authorized. To request additional services, please have your provider complete and submit a Treatment Request Form to: Magellan Health Services, 217 Middlesex Turnpike, Burlington, MA 01803, two weeks prior to the last authorized service.

If you have any questions regarding this information, please contact Magellan at 1-800-444-2426.

Sincerely,

Care Management Department
02BZ5B-000

Similar Notice Sent To:
C Paula Krentzel



**MAGELLAN**
HEALTH SERVICES®
*"Getting Better All the Time"*

July 17, 2007

RE: Yasser Elaskalani
DOB: 01/12/1960
ID#: XXXXXXX3100
Case: 02HGYS-000
Provider: Michael A Harvey
Start Tx Date: 07/17/2007

0194102000-12                          **01941
YASSER ELASKALANI
1321 WORCESTER RD APT 305
FRAMINGHAM MA 01701-8918
llluuulllhullhuullllhhluuullhhluhluduull

Dear Yasser Elaskalani:

Magellan Behavioral Health, a subsidiary of Magellan Health Services (Magellan) has been authorized by Blue Cross Blue Shield of Massachusetts to administer its Managed Behavioral Health Program. As such, we are responsible for reviewing behavioral health and/or substance abuse treatment to ensure that it is medically necessary and appropriate for payment purposes.

We have authorized the following Outpatient treatment subject to any eligibility, benefits, coverage provisions, and benefit limitations under the health plan. The ultimate decision regarding claim payment will be made at the time services are rendered based on benefits, eligibility, coverage, and benefit limitations in effect at the time.



| Procedure | Units | From | To |
|---|---|---|---|
| 90801 Diagnostic Interview Exam | 1 | 07/17/2007 | 12/31/2007 |
| 90806 Ind Tx W/o Med Eval/mgt-45-50 Min: | 7 | 07/17/2007 | 12/31/2007 |

If you believe additional services are necessary they must be pre-authorized. To request additional services, please have your provider complete and submit a Treatment Request Form to: Magellan Health Services, 217 Middlesex Turnpike, Burlington, MA 01803, two weeks prior to the last authorized service.

If you have any questions regarding this information, please contact Magellan at 1-800-444-2426.

Sincerely,

Care Management Department
02HGYS-000

Similar Notice Sent To:
Michael A Harvey

20

The Commonwealth of Massachusetts
Executive Office of Health and Human Services
## Department of Children and Families
63 Fountain Street, Framingham, MA  01702
Tel (508) 424-0100 ❖ Fax (508) 872-8340

DEVAL L. PATRICK
Governor

TIMOTHY P. MURRAY
Lieutenant Governor

JUDYANN BIGBY, M.D.
Secretary

ANGELO MCCLAIN
Commissioner

LIAN HOGAN
Regional Director

July 20, 2009

*(handwritten, illegible)*

Dear Mr. Fawzi,

Enclosed please find copies of the 51A and 51B reports, which are being forwarded to you as requested.  Information relative to the reporter has been redacted as required by Department regulations.  Furthermore, any other information, which is contrary to the child's best interest, may also be redacted.

If I can be of further assistance, please contact my office.

Sincerely,

*(signature)*

Pat McMahon
Area Program Manager

Enclosures

Supporting Children • Strengthening Families

dcf

21

**Commonwealth of Massachusetts**
**Department of Children and Families***

# Child Abuse/Neglect Report

## Intake Information

| | |
|---|---|
| Intake Name: Fawzi | Intake Id: 2951121 |
| Report Date/Time: 05/12/2009 12:24 Pm | Type of Report: 51A Report |
| Screener: NANCY L. GOLUBOWSKI | Area Office: Framingham Area Office |

☐ Hotline

## Information on Children

| Name: | | | Role: Reported Child (In Home) | Primary Language English |
|---|---|---|---|---|
| Gender Male | | DOB 06/22/1999 | SSN# | Ethnicity |
| Home Address 1321 Worcester Road, Framingham, MA 01701 | | | | |
| Work Address | | | | |
| Home Phone 508-561-5664 | | | | |
| Home Fax | | | Work Phone 508-655-2171, 508-652-3569 | |
| Beeper | | | Work Fax | |
| Email | | | Cellular Phone | |
| | | | Other | |

## Contacts / Interviews / Actions

| Contact Method | |
|---|---|
| Date and Time | 05/12/2009 02:23 Pm |
| Last Contact with Family | |
| Staff Person | NANCY L. GOLUBOWSKI |
| People Interviewd | Role |

| Relevant Information | Call to the Dunning School 508-626-9155. Worker inquired about ▮▮▮▮▮▮▮▮▮▮ age 9. The school refers to him as ▮▮▮. Worker was connected to Elizabeth Jeffery the school adjustment counselor. They refer to ▮▮▮▮▮▮▮▮▮▮. At this time, the school does not have concerns for ▮▮▮▮▮. He is described as an "odd kid" and immature but over the last 2 to 3 years has grown. He comes to school prepared, homework done and always talks positive about both parents. She had the opportunity to meet with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
|---|---|
| | At this time, ▮▮▮▮▮ is in the custody of his father and visits with mother whose primary address is in Canada (unknown) every other weekend. Mother, upon father's request, had mother meet with a minister in their Church to counsel mother on allowing father to have custody of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| | The school has never seen any marks or bruises and ▮▮▮▮▮ is a vocal child that would report it he was being "beat". She will check in with the classroom teacher and nurse and agreed to call screener if there are any concerns that she is unaware of. Parents are conflicted and can at times be challenging to deal with as far as to what is the truth, ▮▮▮▮▮ |

| Contact Method | |
|---|---|
| Date and Time | 05/12/2009 02:50 Pm |
| Last Contact with Family | |
| Staff Person | NANCY L. GOLUBOWSKI |
| People Interviewd | Role |

| Relevant Information | Call to Dr. Nancy Homsey 508-620-6615. Worker inquired about ▮▮▮▮▮▮. He was seen for a physical in 8/2008 and is up to date on physicals and immunizations. He has been seen since August of 2008 for sick visits and no concerns are noted in the chart. |
|---|---|

| Contact Method | Call to |
|---|---|
| Date and Time | 05/12/2009 03:37 Pm |
| Last Contact with Family | |
| Staff Person | NANCY L. GOLUBOWSKI |
| People Interviewd | Role |
| Ms. Hebatallah Fawzi | Adult (In Home) |
| Ms. Hebatallah Fawzi | Alleged Perpetrator |
| Relevant Information | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |



Holiday (Patriots Day).

Mother is of the Islam religion and has met with two different religious leaders from two different Mosques for advice on what to do. In their religion, once a male child reaches 7 they are to live with their father, she has spoken to two different Mosques about this, and this is the advice that they have given her. Worker questioned if this is until the male reaches 18. Mother said that it is.

Recently ▓▓▓▓ did not want to visit with her and after school vacation told her that he only wants to visit 1 weekend a month and be with his father 3 weekends a month. He reports that his mother is bad and mean which is not the case at all.

This is not the first time that DCF has become involved with her family. Two years ago, a very inappropriate occurrence happened in the Town of Natick, MA with her son and father, which should be on record.

and at this time, if father is not allowing visitation every weekend he is going against the Court order.

*[handwritten in left margin: Including rel... described re ... Inappropriate in public ... re... is by the mother]*

*[handwritten: had reviewed the most recent Court order]*

| Contact Method | |
|---|---|
| Date and Time | 05/12/2009 04:07 Pm |
| Last Contact with Family | |
| Staff Person | NANCY L. GOLUBOWSKI |
| People Interviewd | Role |
| | |
| Relevant Information | Review of Family Net History |

FNET History 7/11/03 Screen out.

. The parents are planning on getting a divorce. The father was advised to ask the court for a GAL if both parents want custody and he feels mother is not capable of caring for the children. Collaterals had no protective concerns.

Screen out 4/4/2007
Neglect is defined in part as "Failure, by a caretaker, either deliberately or through

negligence or inability, to take those actions necessary to provide a child with minimally adequate food, clothing, shelter, medical care, supervision, emotional stability and growth, or other essential care; provided, however, that such inability is not due solely to inadequate economic resources or solely to the existence of a handicapping condition. This definition is not dependent upon location (i.e., neglect can occur while the child is in an out-of-home or in-home setting)."

The 51A report that was filed on behalf of ~~Taeem~~ age 7 for neglect by the father will be screened out. The report included witnesses observing the father and son engaging in what looked like inappropriate behavior on a boat ramp at a local State Park. Police responded and the father stated that the child likes wrestling moves and they were playing a game. The father was not arrested and has no record. The school does not have concerns at this time.

| | |
|---|---|
| Contact Method | Correspondence from |
| Date and Time | 05/13/2009 08:47 Am |
| Last Contact with Family | |
| Staff Person | NANCY L. GOLUBOWSKI |
| People Interviewd | Role |

| | |
|---|---|
| Relevant Information | Probate and Family Court Department<br>Middlesex, ss Docket No. 03D 0434<br>Stipulation for Judgment on the Complaint for Modification<br>Filed on January 26, 2009<br>Yasser Elaskalarii - Plaintiff<br>vs.<br>Hebatallah Fawzi - Defendant<br><br>1. The parties shall have joint-legal custody of their minor son, ~~Taeem Elaskalari~~ (DOS: June 22, 1999). Both parties shall have equal access to their son☐s schooling records and medical records. Both parties may attend parent-teacher conferences. Both parties may attend and participate in their son☐s schooling and extra-curricular activities.<br>2. The Plaintiff/Father shall have primary physical custody of ~~Taeem Elaskalari~~ (DOB: June 22, 1999). The parties agree that they shall return to Court should their son express a desire to reside with the Defendant/Mother full-time in the future.<br>3. The parties agree that the Defendant/Mother shall have reasonable/liberal visitation including, but not limited to, the following:<br>In December, January, February and March of each year - every other weekend from Fridays at approximately 3:00 p.m. to Monday at approximately 9:00 a.m. (starting on the first weekend of each month)<br>In April, May, September, October and November of each year, every weekend from Fridays at approximately 3:00 p.m. to Mondays at approximately 9:00 a.m.<br>The first two weekends of June each year from Fridays at approximately 3:00 p.m. to Mondays at approximately 9:00 am.<br>From June 16th at 3:00 p.m. to August 1st at 9:00 a.m.<br>In September, October, November of each year - every weekend from Fridays at approximately 3:00 p.m. to Mondays at approximately<br>9:00 a.m.<br>The child shall be with the Defendant/Mother during the entire December, February and April school vacations from 3:00 pm. when said<br>school vacation begins to 9:00 a.m. when school resumes.<br>The parties may modify the parenting arrangement provided that they agree to said changes in writing and provided that they both sign<br>and date said documents.<br>4. The Defendant/Mother may travel to Egypt with the parties☐ minor child ~~Taeem Elaskalari~~ (DOB: June 22, 1999) during his scheduled<br>summer vacation for the purpose of taking a vacation. |



26

Sam

Oh, Abraham lincoln If only
you could come back alive
I would be so happy, I just
have a problem there are
little kids in jail and I
think thats wrong, What
should I do, write on paper
like you or should I fight
for the little kids. Oh
Abraham lincoln please
come back alive.

27